EDWARD P. MURPHY (State Bar No. 182778)
**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
2000 Powell Street, Suite 900
Emeryville, California 94608
Telephone: (510) 740-1500
Facsimile: (510) 740-1501
E-mail: emurphy@fgppr.com

Attorneys for Defendant DEARBORN NATIONAL LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE JENSEN,<br><br>Plaintiff,<br><br>vs.<br><br>DEARBORN NATIONAL LIFE INSURANCE COMPANY, a corporation doing business in California; and DOES 1 to 10, inclusive;<br><br>Defendants.<br>_______________________________/ | No. 5:17-CV-07320-EJD<br><br>**DEARBORN NATIONAL LIFE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**DATE: MAY 23, 2019**<br>**TIME: 9:00 A.M.**<br>**PLACE: COURTROOM 4**<br><br>Amended Complaint Filed: 11/27/17<br>Trial Date: None Set |

**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1

II. DEARBORN NATIONAL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ..... 2

A. Jensen Knew Her Claims Were Not Governed by ERISA. ..... 2

B. Dearborn National is Not Estopped from Asserting a Statute of Limitations Defense. ..... 4

C. Dearborn National Did Not Act in Bad Faith. ..... 10

D. Jensen is Not Entitled to Punitive Damages ..... 14

III. CONCLUSION ..... 15

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Butcher v. Truck Ins. Exch.* (2000) 77 Cal.App.4th 1442, 1461 ........................ 14

*Chodos v. Ins. Co. of North America* (1989) 126 Cal.App.3d 86, 102 .............. 14

*Egan v. Mutual of Omaha Ins. Co*. (1979) 24 Cal.3d 809, 823.......................... 14

*Fifield v. HM Life Ins. Co*., 900 F.Supp.2d 110 (D. N.H. 2012)........................ 12

*Finkelstein v. AXA Equitable Life Insurance Company*, 325 F.Supp.3d 1061, 1068 (N.D. Cal. 2018)........................................................................ 8

*Gordon v. Deloitte & Touche*, 749 F.3d 746, 750 (9th Cir. 2014)................... 3, 7

*Hubka v. Paul Revere*, 215 F. Supp. 2d 1089 (S.D. Cal. 2002)......................... 15

*LaMantia v. Voluntary Plan Administrators, Inc*., 401 F.3d 1114, 1119 (9th Cir. 2005) ........................................................................................ 4

*Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1143, 1150 (1990)......................... 8

*McOsker v. Paul Revere*, 279 F.3d 586 (8th Cir. 2002)...................................... 12

*Mock v. Michigan Millers Mut. Ins. Co.,* 4 Cal.App.4th 306, 328, 5 Cal.Rptr.2d 594 (1992)...................................................................... 14

*Saffon v. Wells Fargo*, 522 F.3d 863 (9th Cir. 2008) .......................................... 12

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.,* 71 Cal. App. 4th 1260, 1268 (1999) .................................................................... 4

**Statutes**

California Civil Code Section 3294............................................................... 14

Civ. Code § 3294(b) ....................................................................................... 14

## I. INTRODUCTION

Partial summary judgment should be granted because Jensen failed to file her cause of action for breach of the implied covenant of good faith and fair dealing (her "bad faith" claim) within the statute of limitations, i.e., within two years after Dearborn National terminated her long-term disability ("LTD") benefit payments. Significantly, Jensen does not dispute that her bad faith claim was not timely filed. Instead, she argues that Dearborn National is estopped from asserting a statute of limitations defense. Jensen's claim for estoppel fails because Jensen cannot meet the required elements of that claim, most critically because it is undisputed that she knew before Dearborn National's final determination that she had a right to sue for bad faith and nothing Dearborn National wrote or is alleged to have said advised her that she had no right to pursue such a remedy. Simply stated, Jensen failed to file suit within the statute due to her own fault and not because of anything Dearborn National said or did.

Dearborn National is also entitled to partial summary judgment because there is no evidence that Dearborn National acted unreasonably or unreasonably withheld LTD benefits. Rather, Dearborn National paid Jensen benefits from 2003 to 2013 and only discontinued benefits when two independent medical experts opined that she was no longer disabled as of October 2013. While Jensen contends that the medical experts are wrong, that does not make Dearborn National's reliance on them unreasonable. Moreover, Dearborn National is entitled to partial summary judgment as to the claim for punitive damages. No reasonable juror could find malice, oppression or fraud on the part of Dearborn National to support a claim for punitive damages.

///

///

///

///

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

## II. DEARBORN NATIONAL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

### A. Jensen Knew Her Claims Were Not Governed by ERISA.

Jensen was fully aware before Dearborn National made its final determination of her claim that her claim was not governed by ERISA. Significantly, on November 4, 2013, Jensen sent correspondence to Dearborn National in which she acknowledged her understanding that "[s]ince my former employer was a government agency, my policy/claim is **not** subject to ERISA or the limitations on my or an attorney's ability to fight hellfire with hellfire." Jensen expressly stated that "**ERISA Limits do NOT Apply Here**" to bad faith and that "[s]ince, in this case, ***ERISA does not apply (the fairer California law applies)***, be assured, if you will not, and/or cannot compel Dearborn to cease its improper and unreasonable behavior and act in good faith, I will be compelled to hire both legal *and* media/social-media outreach assistance to ensure Dearborn a) pays restitution to me for *all* damages I am incurring, and b) does not lure/snare yet more unsuspecting clients to ever subject anyone to the distress and financial and healthcare losses to which you have, in repeated bad faith, subjected me this year." [SUF 6, emphasis in original].

According to Jensen's revised history, the mere inclusion by Dearborn National in the January 29, 2014 letter affirming the termination of her benefits on appeal that "[u]nder Section 502(a) of the Employee Retirement Income Security Act of 1974, you have the right to file suit for benefits," meant she could not pursue a bad faith claim. This is not supported by the evidence, and her contention that the statement caused her not to timely file a bad faith suit is not true. The record clearly establishes that she already knew all of the *facts* she believed would allow her to sue for bad faith.

Jensen states in her Declaration that prior to sending her November 4, 2013 letter to Dearborn National that she had consulted attorneys and reviewed websites. She then contends that after a call with Dearborn National she searched an

unidentified "Website" to review some federal law and this made her believe that ERISA law did apply to her claim. Importantly, even after receiving the January 29, 2014 letter from Dearborn National, Jensen purportedly did more research into whether ERISA applied to her claim. She supposedly "learned that ERISA has a four-year statute of limitations" and that based on "my investigation, I understood that I had four years to file a lawsuit since the ERISA limitations period applied." And throughout Jensen's Opposition Brief (Document No. 35) ("Plaintiff's Brief"), she notes that causes of action under ERISA have a four-year statute of limitations. Actually, ERISA does not impose a statute of limitations on actions to recover benefits. Rather, the statute of limitations is determined by state law. *See, e.g., Gordon v. Deloitte & Touche*, 749 F.3d 746, 750 (9th Cir. 2014) ("There is no federal statute of limitations applicable to lawsuits seeking benefits under ERISA. We therefore look to the most analogous state statute in the state where the claim for benefits arose.") (internal citation removed). Therefore, for Jensen to even determine what the statute of limitations was for her claim, she would have had to look to California law, which sets a four year statute of limitations for breach of contract and two years for bad faith.

Upon researching California law, she would have had to analyze or consult an attorney on whether she could pursue a claim for benefits and for bad faith, and she would have had to reach a conclusion that, based on Dearborn National's letter and despite her own previous knowledge to the contrary, she had no right to pursue a claim for bad faith. In other words, Jensen would have had to (1) abandon her previous, correct determination that ERISA does not apply "[s]ince my former employer was a government agency," and (2) enter into the realm of ERISA preemption to learn that even if ERISA applied, a remedy for bad faith was not available, for certainly nothing Dearborn National wrote or is accused of saying suggested that she had no bad faith action. Critically, however, Jensen does not explain how anything allegedly said by Dearborn National caused her to believe that

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

she could not sue for bad faith when she very clearly understood a few months earlier that she could sue for bad faith. She does not explain how letters and purported conversations in which nothing was said about bad faith caused her to temporarily abandon any thought of suing for bad faith (even though when she eventually filed her *pro per* suit she included two bad faith causes of action). Instead, Jensen simply makes the demonstrably false assertion that ERISA has a four-year statute of limitations and that based solely on this incorrect "fact" she did not meet the two-year statute of limitations "to fight hellfire with hellfire."

Dearborn National is not to blame for Jensen's faulty or deficient research, which supposedly dissuaded her from pursuing a remedy for bad faith. Nor is Dearborn National to blame for Jensen's failure to contact other lawyers to get a clearer answer to any confusion she had about the *law*. Because Jensen's narrative of estoppel is demonstrably false and egregiously lacking in information, it fails as a matter of law to create a *genuine* issue of material fact on the application of the two-year statute of limitations.

### B. Dearborn National is Not Estopped from Asserting a Statute of Limitations Defense.

There are two sets of required elements for equitable estoppel. California case law recognizes four elements: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury. *See Spray, Gould & Bowers v. Associated Internat. Ins. Co.,* 71 Cal. App. 4th 1260, 1268 (1999*); LaMantia v. Voluntary Plan Administrators, Inc*., 401 F.3d 1114, 1119 (9th Cir. 2005). California's civil jury instructions (CACI) recognizes five elements in the context of limitations defenses: (1) That defendant said or did something that caused plaintiff to believe that it would not be necessary to file a lawsuit; (2) That plaintiff relied on defendant's conduct and

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

therefore did not file the lawsuit within the time otherwise required; (3) That a reasonable person in plaintiff's position would have relied on defendant's conduct; (4) That after the limitation period had expired, defendant's representations by words or conduct proved to not be true; and (5) That plaintiff proceeded diligently to file suit once she discovered the need to proceed. CACI No. 456. Jensen fails to establish all the elements of either standard.

The Administrative Record makes perfectly clear that Jensen was never ignorant of the true state of facts and that she was aware at all times that she had an opportunity to sue for bad faith prior to the expiration of the two-year statute of limitations. The limitations period ended, at the latest, on January 29, 2016, two years following Dearborn National's January 29, 2014, letter denying Jensen's appeal for benefits ("Appeal Denial Letter"). [SUF 8]. Again, on November 4, 2013, Jensen sent correspondence to Dearborn National acknowledging her understanding that "[s]ince my former employer was a government agency, my policy/claim is not subject to ERISA or the limitations on my or an attorney's ability to fight hellfire with hellfire." Jensen expressly stated that "**ERISA Limits do NOT Apply Here**" to bad faith and that "[s]ince, in this case, **ERISA does not apply (the fairer California law applies)**, be assured, if you will not, and/or cannot compel Dearborn to cease its improper and unreasonable behavior and act in good faith, I will be compelled to hire both legal and media/social-media outreach assistance . . ." [SUF 6, emphasis in original].

Jensen's own words in November of 2013 (in a letter on which she had copied attorneys) demonstrate not only that she believed she could make a case for bad faith, but that she also knew that ERISA was no impediment to a bad faith claim because "**ERISA Limits do NOT Apply Here.**" To the extent she genuinely believed that Dearborn National was telling her that she could not sue for bad faith (an unreasonable reading of the situation as discussed further below), then Jensen was simply on notice that she needed to figure out the *law* – what causes of action she had

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

and which she did not have. What she cannot say is that she was ignorant of any *facts*. At all times Jensen had the facts at her disposal about her bad faith allegations as well as her right to sue for bad faith ("[s]ince my former employer was a government agency"). The fact that Jensen sued Dearborn National, in *pro per*, under California law, not ERISA, is further evidence that Jensen was not "ignorant of the true state of facts." What she knew when she belatedly filed suit is exactly what she knew in November 2013 – that she could bring a claim for bad faith, but if there was any doubt about that the court would decide whether she could proceed with that claim.

Jensen attempts to distance herself from her own knowledge by pointing to a single sentence in the Appeal Denial Letter that she claims was the source of her confusion: "Under Section 502(a) of the Employee Retirement Income Security Act of 1974, you have the right to file suit for benefits." [Plaintiff's Brief, p. 4]. Jensen's argument is that the Appeal Denial Letter, because of this one sentence, "cemented in Ms. Jensen's mind that ERISA applied and that she had been wrong in her appeal letter." [*Id.*]. Conveniently, Jensen leaves out the next sentence in the Appeal Denial Letter, which reads:

> "If you believe all or part of your claim has been wrongfully denied, you may have the matter reviewed by the California Department of Insurance by contacting the: California Department of Insurance Claims Review Unit Consumer Communications Bureau…"

[Exhibit H to Declaration of Deborah Stuhr (Document 29-3), p. 43]. Jensen's other support for her estoppel claim is that she relied on statements allegedly made by Dearborn National in two phone conversations. In one conversation, a Dearborn National employee allegedly told Jensen that she could get an extension of time to respond to Dearborn National's claim decision under federal law. [Plaintiff's Brief, p. 3-4]. As for the second telephone call, Jensen conveniently remembers no details about that conversation except that she was allegedly informed that ERISA applied to

her Claim. [*Id*.]. Placing aside the facts that (1) Jensen offers no evidentiary support for these allegations and (2) these allegations are premised on inadmissible hearsay, Jensen still has not alleged that Dearborn National represented to her that California law did not apply to her claim.

Jensen allegedly interpreted Dearborn National's statements for the proposition that California law did not apply to her Claim. This is an unreasonable interpretation of the Appeal Denial Letter and purported oral statements, especially considering the language concerning Jensen's right to have her claim reviewed by a California governmental agency. Nothing in the Appeal Denial Letter or the purported oral statements suggested that California law did not apply or that ERISA preempted the California statute of limitations for bad faith claims. To put it in the language of estoppel law, nothing Dearborn National said or wrote demonstrates Dearborn National's intent that its conduct be acted upon by Jensen to keep her from suing Dearborn National for bad faith. The letter and purported statements simply do not address the issue whatsoever. Informing someone of a right to sue for benefits under a statute is not the same thing as telling someone there is no right to sue for something else. What Dearborn National was telling Jensen was that her administrative remedies were now exhausted and that she was free to pursue whatever other remedies she might have in court or with the California Department of Insurance. Nothing about the statements would cause a reasonable person to believe that Dearborn National was setting boundaries on the options available to Jensen. Quite to the contrary, Dearborn National was informing her that all options were available.

Jensen relies on *Gordon v. Deloitte & Touche*, 749 F.3d 746, 751-752 (9th Cir. 2014) for the proposition that, where an insurer incorrectly asserts that ERISA applies to an insured's claim, the insurer is estopped from asserting a statute of limitations defense. *Gordon*, however, did not address this issue. In *Gordon*, because the alleged misrepresentation occurred after the statute of limitations had run, the Court

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

simply noted that it was impossible for the misrepresentation to have misled the insured. The Court did not discuss whether the misrepresentation in question, had it occurred prior to the close of the limitations period, would have been sufficient to actually mislead the insured such that the insurer was estopped from asserting the statute of limitations as a defense. As such, *Gordon* does not dictate the result opined by Jensen. Here, there was no misrepresentation and there was nothing Dearborn National said or did that would have dissuaded anyone from pursuing a bad faith claim. Moreover, this discussion in *Gordon, supra,* was simply dicta and had no bearing on the actual holding.

More importantly, Dearborn National was not under any obligation to affirmatively disclose to Jensen that she may have an action in tort against Dearborn National or that such an action is subject to a statute of limitations. An insurer has no duty to advise an insured of different legal theories upon which the insured may possibly sue the insurer. *See Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1143, 1150 (1990). Likewise, an insurer has no duty to disclose a statute of limitations concerning lawsuits in its denial letter unless it is relying on a regulatory statute of limitations to deny the claim. *See Finkelstein v. AXA Equitable Life Insurance Company*, 325 F.Supp.3d 1061, 1068 (N.D. Cal. 2018).

The above paragraphs demonstrate that Jensen cannot establish that she was ignorant of the "true state of facts" or that she reasonably relied on Dearborn National's conduct, depriving her estoppel claim of two essential elements. Additionally, Jensen also cannot demonstrate either that Dearborn National intended its conduct to be acted upon or that it acted in such a way that Jensen could have inferred Dearborn National's intent. There is simply nothing in the record to demonstrate that Dearborn National took any action that can be reasonably interpreted as evidencing Dearborn National's intent to induce Jensen into missing the statute of limitations on her potential bad faith claim.

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

Likewise, nothing in the record supports the notion that Dearborn National lulled Jensen into missing the statute of limitations. Dearborn National's Appeal Denial Letter, which was issued without delay, informed Jensen that she may sue Dearborn National under ERISA. That, by itself, could not have induced Jensen into missing a statute of limitations. This is not a situation where Dearborn National, by its conduct, attempted to prevent Jensen from filing suit. Indeed, Dearborn National's language informed Jensen of a potential cause of action. Furthermore, not only did Jensen explicitly and correctly tell Dearborn National in 2013 that state law, not ERISA, applied to her claim, but she chose to file suit *pro per* under the correct state law, not ERISA. In other words, Jensen was aware that state law applied to her claim and she filed under the correct law without an attorney. Dearborn National's conduct could not have reasonably led, and did not in fact lead to the result alleged by Jensen.

Importantly, Dearborn National telling Jensen that she "can" sue for benefits under ERISA does not constitute a representation that Jensen could not make claim under California law for bad faith. Dearborn National's alleged statements were not a refutation of Jensen's stated position that ERISA did not apply. The only reasonable conclusions Jensen could have drawn from Dearborn National's statement were either that (1) Dearborn National had not considered her position because Dearborn National did not address it, or (2) that the parties were in dispute as to what law applied. It was not reasonable for Jensen to conclude from Dearborn National's Appeal Denial Letter that her position was undisputedly wrong. Nothing about that letter would have reasonably caused anyone to abandon a claim they thought was a possibility. Jensen's letter of November 4, 2013, correctly asserted that **"For the same reason I did not qualify for Social Security (because I had been a public employee of a government agency), I am not subject to ERISA."** [Exhibit E to Declaration of Deborah Stuhr (Document 29-3), p. 25]. The Appeal Denial Letter did not address this assertion in the slightest and cannot have reasonably been seen as

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

refuting that statement. In short, Jensen was well aware of the issues that governed whether ERISA would apply and did not reasonably rely on the one sentence in the Appeal Denial Letter to abandon her claim.

The record is clear: at no time did Dearborn National ever represent to Jensen that California law would not apply to her claim. The three statements allegedly made by Dearborn National in reference to ERISA or "federal law" cannot be reasonably interpreted as representing to Jensen that her claim was not governed by California law, that California law would not apply to her claim, or that she should delay in filing a bad faith suit under California law. Jensen's own uncompromising statements concerning the applicability of ERISA demonstrate that she understood California law, not ERISA, applied to her claim. Additionally, Dearborn National never took any action that lulled Jensen into a false sense of security such that Jensen was induced into not filing within the applicable limitations period. For these reasons, Jensen has not satisfied the elements of equitable estoppel.

**C. Dearborn National Did Not Act in Bad Faith.**

Jensen argues that Dearborn National breached the implied covenant of good faith and fair dealing by "unreasonably terminating Ms. Jensen's disability benefits without first thoroughly investigating her claim." The administrative record demonstrates, however, that this is simply not the case. It is undisputed that Dearborn National had the right to request Jensen's medical records to determine whether she still qualified for benefits under the Policy. Dearborn National did request from Jensen all documents relating to medical information from January 1, 2011. [SUF 11]. Upon review of her medical records, Dearborn National sent correspondence to Jensen advising her that her medical records failed to provide proof of continued disability as defined by the Policy. As such, Dearborn National discontinued Jensen's claim for benefits beyond October 1, 2013. Jensen was advised that she had a right to request a review by the California Department of Insurance. [SUF 4]. Upon receipt of Jensen's appeal of this decision, Dearborn

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

National retained two independent, board-certified medical doctors, Steven A. Channick, M.D. and Michael Gross, M.D., to review Jensen's medical records. [SUF 12]. Both physicians reviewed Jensen's medical records and determined that the available clinical records and findings did not support Jensen's inability to perform the sustained material duties of any occupation beyond October 1, 2013. [SUF 12]. Dearborn National upheld its initial denial based on this information. [SUF 8].

The above actions do not reflect bad faith on the part of Dearborn National. Dearborn National's denial was based on the clinical findings of two board-certified, independent physicians. That Jensen disagrees with the findings of the two physicians named above does not establish that Dearborn National acted in bad faith by relying on the expert opinions of those physicians.

Jensen contends that Dearborn National acted unreasonably by (1) relying on the lack of medical records to support its initial denial, (2) denying Jensen's claim for benefits without evidence that her condition had improved, (3) relying on "obviously deficient" paper reviews of her medical record by Dr. Channick and Dr. Gross, and (4) failing to follow the recommendation of her private physician to obtain further testing.

With regards to the first argument, it was reasonable for Dearborn National to rely on the lack of medical records sent to it to determine that Jensen had not provided proof of continued disability. It is undisputed that Dearborn National did not receive medical records from Jensen's primary care physician prior to making its initial denial despite numerous and regular requests for those documents, which were obviously necessary for a claim determination based on her condition at the time. Dearborn National contacted Jensen's primary care physician on multiple occasions—on a weekly basis for a period of time—and was advised that the documents were forthcoming. [Exhibit C to Declaration of Deborah Stuhr (Document 29-3), p. 10]. The documents were not delivered despite those assurances. Dearborn National was not under an obligation to seek the assistance of Jensen in physically

obtaining those records; it was already operating with an authorization signed by Jensen. [*Id*, p. 13]. By continuously and regularly attempting to secure the medical records in question, Dearborn National acted reasonably in its attempt to obtain necessary documentation.

With regards to the second argument, Jensen cites no mandatory authority for her position but instead relies on three federal cases applying ERISA. Nothing in California law suggests that an LTD insurer may only deny benefits to an insured after an initial approval of benefits where the insured's condition was shown to have improved since the initial denial. If this were the case, an insurer would never be able to discontinue benefits that were wrongly granted. Furthermore, the cases cited by Jensen do not support her position. *Fifield v. HM Life Ins. Co*., 900 F.Supp.2d 110 (D. N.H. 2012), involved an entirely different scenario where the insurer approved benefits but stated *in the approval letter itself* that benefits would be terminated after one month, which the Court found to be unreasonable. That is clearly not the case here. Likewise, *Saffon v. Wells Fargo*, 522 F.3d 863 (9th Cir. 2008), did not establish that an insurer must *always* demonstrate that the insured has not improved to rescind an initial denial; it simply noted that improvement would be expected in such cases.

Jensen's third cited authority, *McOsker v. Paul Revere*, 279 F.3d 586 (8th Cir. 2002), is the most instructive. In that case, the Eighth Circuit noted that "[I]n determining whether an insurer has properly terminated benefits that it initially undertook to pay out, it is important to focus on the events that occurred between the conclusion that benefits were owing and the decision to terminate them." *McOsker*, 279 F.3d at 590. In this case, the "events" that occurred between the initial approval and later denial are the two independent evaluations of Jensen's medical records conducted by board-certified physicians, both of which concluded that Jensen was not disabled. Dearborn National hardly acted unreasonably by having physicians conduct a review of Jensen's medical records, as was its right.

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

With regards to the third argument, Jensen argues that Dearborn National's hired physicians committed an error by concluding that "there was no objective evidence in the medical records that Ms. Jensen was disabled from her reported conditions." [Plaintiff's Brief, p. 13]. However, Jensen acknowledges that Dr. Channick stated in his report that:

> "In regards to chronic fatigue, individuals with this disorder have no identifiable objective medical basis for their symptoms; that is, individuals with this disorder report symptoms but have normal physical examinations and normal findings on diagnostic testing. Consequently, there is no objective medical basis upon which to predicate work restrictions or accommodations."

[*Id*. at p. 15]. From this passage, it is clear that Dr. Channick did not base his conclusions on the lack of "objective evidence" as is asserted by Jensen. Rather, this passage demonstrates that Dr. Channick performed his review of Jensen's medical records with the understanding that Jensen's conditions cannot always be tested using objective methods and still concluded that the records did not reflect that Jensen suffered from her claimed disabilities. Furthermore, Jensen ignores the fact that Dr. Gross consulted with her own physician, Dr. Baker, prior to issuing his conclusion. [SUF 13]. In other words, the reviewing physician sought input from the insured's personal doctor and took his opinion into consideration prior to reaching a conclusion. It is simply false to claim that Dearborn National imposed an inappropriate standard on Jensen by relying on its expert physicians.

With regards to the final argument, Jensen cannot simultaneously claim that Dearborn National should have conducted further medical testing and that there is no "objective evidence" to support her diagnosis. If Jensen's alleged disabilities cannot be diagnosed with objective evidence, then it would be pointless for Dearborn National to have requested medical testing. All Dearborn National could have done to evaluate Jensen's disability status is to retain experts to review the medical files currently in existence, which is exactly what Dearborn National did.

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

No evidence suggests that Dearborn National acted in bad faith. Dearborn National paid Jensen benefits from 2003 to 2013 and only discontinued benefits when two independent medical experts opined as of that point that she was not disabled after performing a review of her medical files and consulting with her personal physician.

**D. Jensen is Not Entitled to Punitive Damages**

As noted in Dearborn National's motion for partial summary judgment, even accepting, *arguendo*, that Jensen can succeed in showing bad faith, it does not mean she is automatically entitled to punitive damages. *See Mock v. Michigan Millers Mut. Ins. Co.,* 4 Cal.App.4th 306, 328, 5 Cal.Rptr.2d 594 (1992). Under California Civil Code Section 3294, punitive damages may be awarded only when the defendant has been found, by clear and convincing evidence, guilty of malice, oppression, or fraud in the tortious conduct on which liability is based. Here, there is no evidence that would support a basis for awarding punitive damages against Dearborn National. Dearborn National paid benefits under the Policy from 2003 to October 2013 and only terminated those benefits when two independent doctors opined that the medical records did not support her inability to perform the substantial material duties of any occupation beyond October 1, 2013. [SUF 2, 3, 4, 8, 12 & 13]. These actions simply do not reflect malice, oppression or fraud for purposes of punitive damages.

Furthermore, while Jensen makes allegations of bad faith on the part of Dearborn National, (1) those allegations are not supported by the record and (2) there is no evidence to prove that any officer, director or managing agent of Dearborn National authorized or ratified any alleged improper conduct. Jensen cannot be entitled to punitive damages without establishing those facts. *See* Civ. Code § 3294(b); *Chodos v. Ins. Co. of North America* (1989) 126 Cal.App.3d 86, 102; *Egan v. Mutual of Omaha Ins. Co*. (1979) 24 Cal.3d 809, 823; *Butcher v. Truck Ins. Exch.* (2000) 77 Cal.App.4th 1442, 1461.

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

Jensen's reliance on *Hubka v. Paul Revere*, 215 F. Supp. 2d 1089 (S.D. Cal. 2002) is misplaced. Despite Jensen's assertions to the contrary, the fact that the examining doctor in that case did not heed the recommendations of the insured's treating physician was totally irrelevant to the Southern District's holding. In *Hubka*, the Court merely recognized that there existed questions of fact with regards to the reasonableness of the insurer's denial. Those questions of fact do not exist in this case. Here, unlike in *Hubka*, the "paper review" was conducted by two independent physicians, not a doctor employed by the insurer itself. Additionally, as discussed, conducting a physical exam here—per Jensen's own arguments—would have been pointless due to the fact that Jensen's claimed disabilities cannot be detected with objective evidence. This differs from the situation in *Hubka*, which involved a spine injury.

## III. CONCLUSION

Based on the foregoing reasons, this Court should grant Dearborn National's summary judgment dismissing Jensen's cause of action for bad faith and her claim for punitive damages. Jensen's action for bad faith is time barred and she cannot show an unreasonable withholding of policy benefits. Additionally, there are no facts or evidence to support Jensen's claims for punitive damages even if her bad faith claim survives.

Dated: May 7, 2019

**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**

By: *s/Edward P. Murphy*
EDWARD P. MURPHY

Attorney for Defendant DEARBORN NATIONAL LIFE INSURANCE COMPANY

**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500