UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE JENSEN,<br><br>Plaintiff,<br><br>v.<br><br>DEARBORN NATIONAL LIFE INSURANCE,<br><br>Defendant. | Case No. 5:17-cv-07320-EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Dkt. No. 29 |

This is a suit for breach of an insurance contract and breach of the implied covenant of good faith and fair dealing under California state law. Plaintiff Stephanie Jensen alleges that Defendant Dearborn National Life Insurance unreasonably and without proper cause discontinued her long term disability benefits. Presently before the court is Defendant's Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56. Dkt. No. 29. The court has reviewed the related documents and pertinent law, and finds that Defendant is not entitled to relief. The court DENIES Defendant's motion.

### I. BACKGROUND

Plaintiff was provided long term disability insurance through her employer, Midpeninsula Regional Open Space District. *See* Def.'s Mem. P. & A. in Supp. Mot. for Partial Summ. J. at 1 (Dkt. No. 29-1 at 5). The Policy is currently funded and administered by Defendant. *Id.* Plaintiff applied for long term disability ("LTD") benefits on June 8, 2003, asserting that she suffered from Chronic Fatigue Syndrome (CFS), fibromyalgia, and adrenal insufficiency. Jensen Decl. ¶ 8, Ex. 2. She began receiving LTD benefits in 2003 and continued receiving benefits without interruption until October 2013. Stuhr Decl. ¶ 4, Ex. C.

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
1

In early 2013, pursuant to its policy, Defendant requested from Plaintiff updated documentation, including but not limited to, all medical information. *Id*. Ex. B. Based on Plaintiff's response, Defendant also requested her medical records. Def.'s Mem. P. & A. in Supp. Mot. for Partial Summ. J. at 2 (Dkt. No. 29-1 at 6). Defendant was not able to secure medical records from Plaintiff's primary care physician, Dr. Randy Baker, when it requested them in June 2013. Dkt. No. 38-1 at 48 (Pl.'s Fact 78). In a letter dated September 30, 2013, Defendant informed Plaintiff that her medical records failed to provide proof of continued disability as defined by the Policy, and therefore her benefits would be discontinued after October 1, 2013. Stuhr Decl. ¶ 4, Ex. C. This letter also notified Plaintiff that she could request a review by the California Department of Insurance, Claims Service Bureau. *Id*.

In mid-October 2013, Defendant sent Plaintiff a letter in response to a complaint Defendant had received from the California Department of Insurance. Def. *Id*. ¶ 5, Ex. D (Def.'s Fact 5). Defendant provided an analysis of its denial and notified Plaintiff that she could appeal the decision. *Id*. On November 4, 2013, Plaintiff sent her appeal (the "Appeal Letter") to Defendant that stated her grievances against Defendant and accused Defendant of acting in bad faith. *Id*. ¶ 6, Ex. E (Def.'s Fact 6). In discussing bad faith, Plaintiff noted that "[E]RISA does not apply (the fairer California law applies)." *Id*. Ex. E, at 5 (Dkt. No. 29-3 at 26). Defendant confirmed receipt of Plaintiff's appeal in November of 2013. *Id*. ¶ 7, Ex. F (Def.'s Fact 7).

In January of 2014, Dr. Baker sent Defendant a letter in support of Plaintiff's Appeal Letter. Dr. Baker confirmed that Plaintiff had been his patient since March 1989 and was still "totally disabled due to multiple chronic severe medical conditions" including "debilitating fatigue," "fibromyalgia," and high levels of mercury. Jensen Decl. Ex. 5, at DNL 000329 (Dkt. No. 35-4 at 80). He also included his most recent notes from his in-person examinations of her along with notes from the last five years. Jensen Decl. Ex. 5; Dkt. No. 38-1 (Pl.'s Fact 88).

Defendant solicited independent medical reviews from Dr. Steven A. Channick and Dr. Michael Gross. Stuhr Decl. Ex. G, H (Dkt. No. 29-3 at 32, 37). In a letter dated January 22, 2014, Dr. Channick stated there were no objective clinical findings to support Plaintiff's inability to

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
2

United States District Court
Northern District of California

1  perform the material duties of any occupation. *Id*. Ex. G, at 3 (Dkt. No. 29-3 at 34). Dr. Channick
2  also noted that he was unable to reach Plaintiff's primary care physician, Dr. Baker, even after
3  several attempts. *Id*. In a letter dated January 29, 2014, Dr. Gross indicated that there were no
4  objective clinical findings to support Plaintiff's inability to perform the sustained material duties
5  of any occupation beyond October 1, 2013. *Id*. Ex. H at 4 (Dkt. No. 29-3 at 40). Dr. Gross noted
6  that he had spoken to Dr. Baker, who told him that due to Plaintiff's overall condition, Plaintiff
7  was unable to do any work. *Id*. Ex. H, at 3 (Dkt. No. 29-3 at 39).

On January 29, 2014, Defendant affirmed its previous decision to discontinue Plaintiff's benefits, noting that this was the final review and all administrative remedies had been exhausted. Defendant also notified Plaintiff that she had a right to file suit for benefits under § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") (the "Response to Appeal Letter"). *Id*. Ex. I (Dkt. No. 29-3 at 42).

On September 29, 2017, Plaintiff filed suit in Santa Clara Superior Court against Defendant alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duty, (4) intentional infliction of emotional distress, and (5) bad faith. Murphy Decl. Ex. A. Plaintiff filed a First Amended Complaint against Defendant alleging (1) breach of insurance contract and (2) breach of the implied covenant of good faith and fair dealing. *Id*. Ex. B. Defendant removed the matter to federal court pursuant to 28 U.S.C. § 1441(b). Dkt. No. 1.

In February of 2019, Defendant filed this Motion for Partial Summary Judgment on Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing (the "bad faith claim") and her prayer for punitive damages. Dkt. No. 29. Defendant advances two main arguments in its Motion. First, Defendant contends that Plaintiff's bad faith claim is time-barred because she filed her complaint after the two-year statute of limitations had run. Second, Defendant argues it acted reasonably when it terminated her LTD benefits because it relied on independent medical expert opinions.

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. *Id.* at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *Id*. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
4

produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id*.

**III. DISCUSSION**

A. Statute of Limitations

Defendant argues that Plaintiff's bad faith claim is time-barred because she filed her initial complaint after the two-year statute of limitations for bad faith claims provided by California Code of Civil Procedure § 339. There is no dispute that Defendant denied Plaintiff's appeal for benefits on January 29, 2014, and Plaintiff filed suit on September 29, 2017. Therefore, Plaintiff's suit was not filed within the two-year statute of limitations. In response, Plaintiff contends that equitable estoppel should apply because Defendant repeatedly misrepresented to her that ERISA applied to her case and that she relied upon Defendant's misrepresentations to her detriment.[1]

"As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representation or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *LaMantia v. Voluntary Plan Adm'rs, Inc.*, 401 F.3d 1114, 1119 (9th Cir. 2005) (quoting *Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1371–72 (9th Cir.1985)). In order for estoppel to apply, "(1) the party to be estopped must be apprised of the facts; (2) the other party must be ignorant of the true state of facts, and the party to be estopped must have acted so that the other party had a right to believe that the party intended its conduct to be acted upon; and (3) the other party relied on the conduct to its prejudice." *LaMantia*, 401 F.3d at 1119 (quoting *Hinton v. Pac. Enters.*, 5 F.3d 391, 396-97 (9th Cir. 1993)).

Plaintiff's estoppel theory is based upon Defendant's Response to Appeal Letter which stated that Plaintiff had a right to file suit for benefits under § 502(a) of the Employee Retirement Income Security Act of 1974. Stuhr Decl. Ex. I. Plaintiff also asserts that she had at least two separate conversations with representatives from Defendant who mentioned ERISA.[2] During one

---

[1] ERISA does not apply to employee benefit plans that are government plans. 29 U.S.C. § 1003(b)(1).
[2] Defendant objects to these statements as hearsay. The objection is overruled. The statements are

telephone call, a representative from Defendant named "Deborah" directed Plaintiff to a federal labor law website. Jensen Decl. ¶ 52. During another phone call, a representative of Defendant told Plaintiff that ERISA applied. *Id*. ¶ 54. Plaintiff contends that she believed and relied on Defendant's representation that ERISA applied, and therefore she did not think she needed to comply with California's two-year statute of limitations. *Id*. ¶¶ 53, 55, 57, 58. Plaintiff also asserts that she believed ERISA suits were subject to a four-year statute of limitations. *Id*. ¶ 57.[3]

Defendant contends that estoppel does not apply because Plaintiff was never ignorant of the true state of facts and was "aware at all times that she had an opportunity to sue for bad faith prior to the expiration of the two-year statute of limitations." Def.'s Reply Br. in Supp. of Mot. Partial Summ. J. at 5 (Dkt. No. 38 at 8). Defendant reasons that Plaintiff knew her bad faith claim was not governed by ERISA because Plaintiff stated in her Appeal Letter that "ERISA Limits do NOT Apply Here" and "I am not subject to ERISA." Stuhr Decl. Ex. E, at 5. Defendant also implies that Plaintiff's purported ignorance is not credible because Plaintiff researched whether state or ERISA law governed her claim and that her research ultimately led Plaintiff to file the instant suit in pro per under California law, not ERISA.

Moreover, Defendant contends that nothing in the Appeal Letter or the purported oral statements by its representatives suggested that California law was inapplicable or that ERISA preempted the California statute of limitations for bad faith claims. Def.'s Reply Br. in Supp. of Mot. Partial Summ. J. at 7 (Dkt. No. 38 at 10). As such, Defendant contends that there is no evidence of Defendant's "intent to induce [Plaintiff] into missing the statute of limitations on her potential bad faith claim." *Id*. at 8.

Given the disputed facts and drawing all reasonable inferences in favor of Plaintiff, the court concludes that genuine issues of material fact preclude summary judgment on the statute of

---

not being offered for the truth of the matter asserted (i.e. that ERISA applies) and under Federal Rules of Evidence 801(d)(2)(d), an opposing party's statement is not hearsay.

[3] There is no federal statute of limitation applicable to lawsuits seeking benefits under ERISA. *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program,* 222 F.3d 643, 646 (9th Cir. 2000). Therefore, courts "look to the most analogous state statute" in the state where the claim for benefits arose. *Id.* In California, the most analogous statute is its four-year statute of limitation governing actions involving written contracts. *Id.* at 648.

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
6

1    limitations defense.  A reasonable jury could find, as Plaintiff argues, that a representative told her

2    ERISA applied, and that she reasonably believed and relied upon that representation in concluding

3    that she did not need to comply with the two-year statute of limitations.  Conversely, a reasonable

4    jury could find that Plaintiff was never ignorant of the true facts based upon the emphatic language

5    and tone of Plaintiff's Appeal Letter.  A reasonable jury could also disregard evidence of the

6    telephone calls as not credible.  A reasonable jury could also find that Defendant did not intend for

7    Plaintiff to act upon the alleged misrepresentations, and further that Plaintiff did not rely on

8    Defendant's conduct.  "At the summary judgment stage the judge's function is not himself to

9    weigh the evidence and determine the truth of the matter but to determine whether there is a

10   genuine issue for trial.  *See Anderson*, 477 U.S. at 249-55.

11       B.  Covenant of Good Faith and Fair Dealing

12       Defendant contends that it did not unreasonably withhold benefits because it paid

13   Plaintiff's Policy benefits for ten years before discontinuing payments when Plaintiff failed to

14   provide evidence of her ongoing disability.  Def. Mem. P. & A. Supp. Mot. for Partial Summ. J. at

15   7.  Additionally, Defendant contends that it did not act in bad faith because it reasonably relied on

16   two expert opinions to ultimately deny Plaintiff's claim.  Plaintiff counters that Defendant acted

17   unreasonably because, among other things, Defendant conducted only a cursory investigation,

18   relied on deficient expert opinions, and changed Plaintiff's disability status without proof that her

19   medical condition had improved.

20       Every insurance contract has an implied covenant of good faith and fair dealing.  *Jordan v.*

21   *Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1071 (2007).  "To fulfill its implied obligations, an

22   insurer must give at least as much consideration to the interests of the insured as it gives to its own

23   interest."  *Id.* at 1072.  "The insurer's duty to give as much consideration to the insured's interests

24   as it does to its own obligates it to investigate a claim thoroughly."  *Id*. at 1074.  The insurer

25   cannot "reasonably and in good faith" deny payments without a full investigation into the grounds

26   for denial and is subject to liability in tort if it "unreasonably and in bad faith withholds payment

27   of the claim of its insured."  *Id*.  (quoting *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal.3d 208, 214-

28   Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
7

15 (1986)). Moreover, an insurer "may not ignore evidence which supports coverage." *Id.*

A court may be inclined to adjudicate a bad faith claim in the insurer's favor if the insurer relied on advice and opinions of independent experts. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 348 (2001). Such reliance, however, does not automatically insulate an insurer from a bad faith claim based on a "biased investigation." *Id.* There are several circumstances where a biased investigation claim should go to the jury, including, but not limited to, when an insurer's experts were unreasonable and the insurer failed to conduct a thorough investigation. *Id.* at 348-49.

Here, there are triable issues as to whether Defendant's reliance on its medical experts was reasonable. Dr. Gross and Dr. Channick opined that there were no objective clinical findings to support Plaintiff's inability to perform work. There are, however, no objective laboratory tests to diagnose Chronic Fatigue Syndrome ("CFS") and fibromyalgia. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 677 (9th Cir. 2011). In the context of ERISA, courts have concluded that it is unreasonable for an insurer to require objective medical evidence of complaints that are inherently subjective in nature. *See e.g. Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 635 (9th Cir. 2009) (stating "[i]t would probably have been unreasonable for Hartford to require Montour to produce objective proof of his pain level"); *Cook v. Liberty Life Assur. Co. of Boston,* 320 F.3d 11, 21 (1st Cir. 2003) (requiring objective documentation of CFS is unreasonable); *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433 (3rd Cir. 1997) (same); *Hagerty v. Am. Airlines Long Term Disability Plan*, No. C09-3299 BZ, 2010 WL 3463620, at *2 (N.D. Cal. Sept. 3, 2010).

In *Salomaa*, an insured individual worked for over twenty years before being diagnosed with CFS. 642 F.3d at 667, 669. The Ninth Circuit held that the insurer's decision to deny coverage was "illogical, implausible, and without support in inferences that could reasonably be drawn from the record" because (i) the doctors who personally examined the insured concluded that he was disabled; (ii) the plan administrator demanded objective tests to establish the existence of a condition for which there are no objective tests; and (iii) the experts that the insurer relied

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
8

upon only examined his paper file and not the insured. *Id*. at 676.

Like the insured in *Salomaa*, Plaintiff is diagnosed with CFS and fibromyalgia—conditions for which there are no objective tests. *Id*. at 677. Defendant's experts only reviewed the paper files of Plaintiff. The experts never performed a physical examination, despite Plaintiff's willingness to undergo any necessary examination and tests. Jensen Decl. Ex 1, Section F at 23, ¶ 41. Additionally, the experts did not even state that Plaintiff was no longer disabled; they simply stated that there were no objective clinical findings to support Plaintiff's inability to perform the sustained material duties of any occupation beyond October 1, 2013. Under these circumstances, a reasonable jury could find that Defendant acted unreasonably by relying exclusively on its experts, failing to conduct a physical examination of Plaintiff, and disregarding the opinion of Plaintiff's treating physician. *Jordan*, 148 Cal. App. 4th at 1072.

Plaintiff also contends that Defendant acted in bad faith because Defendant changed her disability status without proof that her medical condition had improved. In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008), the insured suffered from degeneration of her cervical spine, a condition confirmed by repeated MRI scans and x-rays, and had been diagnosed with chronic headaches, chronic pain syndrome, cervical spondylosis, cervical strain and sprain. After paying long term benefits for a year, the insurer, MetLife, informed the insured that she no longer met the definition of disability and terminated her benefits. *Id*. at 866. MetLife's decision was based in part on the fact that the insured's MRI showed no progression in degeneration. *Id*. at 871. The Ninth Circuit rejected the proffered justification because MetLife did not explain why further degeneration was necessary to sustain a finding that the insured was disabled. *Id*. The Ninth Circuit reasoned that MetLife had been paying long-term disability benefits for a year, which suggested that the insured was already disabled, and that in order to find the insured no longer disabled, one would expect the MRIs to show an improvement, not a lack of degeneration. *Id*. Like the insurer in *Saffron*, Defendant in this case did not consider whether there was any evidence that Plaintiff's condition had improved before terminating her benefits. A reasonable jury could find that Defendant's failure to do so constituted bad faith. Defendant's

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
9

1  motion for summary judgment on the bad faith claim is denied.

## C. Punitive Damages

Punitive damages are only allowed in certain cases as a punishment for the defendant and should be granted sparingly with the "greatest caution." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 828 (1979) (citing *Gombos v. Ashe*, 158 Cal.App.2d 517, 726-27 (1958)). It is not sufficient to prove that there was spite or ill will, negligence or even gross negligence. *Id.* "Mere breach of the covenant of good faith and fair dealing is insufficient to support a finding of intent necessary to justify an award of punitive damages." *Id.* Rather, punitive damages are appropriate only where a party is guilty of malice, oppression or fraud. *Id.* at 825.

Here, Plaintiff contends the same set of facts supporting her bad faith claim also support her prayer for punitive damages. In addition to the arguments already discussed above, Plaintiff argues that Defendant began to make an earnest effort to "intimidate" her. Pl.'s Opp. to Def.'s Mot. Partial Summ. J. at 10 (Dkt. No. 38 at 14). The alleged intimidation took two forms. First, Plaintiff contends that in the ten months leading up to termination of her benefits, Defendant's Senior Claim Advocate, Diane Eirich ("Eirich"), routinely withheld or delayed benefit payments. Dkt. No. 38-1 at 45-46 (Pl's fact 70, 71). Second, in February 2013 Eirich sent Plaintiff a letter notifying Plaintiff that she had been overpaid $237,403.10 over the past ten years. Dkt. No. 38-1 at 44 (Pl's fact 66, 67), Ex. 9-10. According to Defendant's calculations, Plaintiff was eligible for Social Security Disability Income ("SSDI") Benefits from 2003 through 2013, and Defendant was entitled to reduce Plaintiff's LTD benefits by that amount. Eirich told Plaintiff she must immediately repay Defendant; that Plaintiff would not receive any LTD benefits until Defendant had been repaid in full; that in the meantime, any LTD benefits becoming payable would be applied to reduce the amount of the purported overpayment; and that Defendant may charge Plaintiff interest if Plaintiff did not repay Defendant within thirty days. *Id.* Plaintiff contends that the threatening and abusive letter was sent in bad faith because Plaintiff's claim file contained clear documentation of Plaintiff's ineligibility for SSDI benefits. Dkt. No. 38-1 at 44 (Pl.'s fact 66, 67), Ex. 9-10.

"Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002). Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find Defendant's conduct malicious, oppressive or fraudulent. Defendant's motion is denied as to Plaintiff's prayer for punitive damages.

## IV. OBJECTIONS

Both parties raise several objections. The court either declines to rule on them or overrules them as follows. Plaintiff objects to portions of Defendant's Statement of Facts (Dkt. No. 29-2). However, the court does not find any of the challenged evidence to be material, and the challenged evidence does not factor into the court's reasoning. Therefore, the court declines to rule on the Plaintiff's objections.

Defendant objects to nearly all of the facts included in Plaintiff's Separate Statement of Additional Material Disputed Facts ("Plaintiff's Statement of Facts"). Dkt. No. 38-1. Defendant's hearsay objection to facts 10, 18, 66, 67, 70, 71, 76, 77, and 80 are overruled. The court declines to rule on the remaining objections because the challenged evidence is immaterial to the disposition of the instant motion.

Defendant also objects to Plaintiff's Statement of Facts because it violates the court's Standing Order by adding more than five pages to the Moving Separate Statement. *See* 2019 Civil Standing Order § V.B.2. Plaintiff is admonished for violating the court's standing order. Plaintiff's sixty-six page Statement of Facts far exceeds the five page limit.

## V. CONCLUSION

Because there are genuine disputes of material fact, Defendant's motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 2, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-07320-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
11